

**SIGNED this 21st day of November, 2012.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-12589-CAG |
| | § | |
| TRES-ARK, INC., | § | |
| | § | |
| Debtor. | § | CHAPTER 7 |

## MEMORANDUM OPINION AND ORDER DENYING
## DEBTOR'S MOTION TO REMOVE TRUSTEE

Came on to be considered the above-styled and numbered proceeding and, in particular, Debtor's Motion to Remove Trustee filed on June 28, 2012 (ECF No. 149). The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper under 28 U.S.C. §§ 1408 and 1409. The Court held a hearing on this matter on October 2, 2012, and took the matter under advisement. This Memorandum Opinion constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Federal Rule of Bankruptcy Procedure 7052. For reasons discussed below, the Court finds Debtor's Motion should be DENIED.

1

**FACTUAL AND PROCEDURAL BACKGROUND**

The events leading to this Motion began two years before Debtor's bankruptcy filing, when Horiba International Corporation ("Horiba") sued Debtor, a Minnesota corporation, in the Central District of California for alleged breach of contract. (Cause No. 02-07-CV-07106-AHM-CT, ECF No. 1). Debtor answered the suit and filed a counterclaim against Horiba alleging various state law contract claims ("the Horiba counterclaims") (*Id.* at ECF No. 5). While this litigation was pending, Debtor filed its Chapter 7 bankruptcy petition on September 15, 2009, effectively putting the California litigation on hold (Bankruptcy Case, ECF No. 1). John Patrick Lowe ("Trustee") was appointed trustee of the estate (ECF No. 2).

On Debtor's Schedule B, Debtor listed two claims under "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and right to set off claims" (ECF No. 9). The first claim listed was the Horiba counterclaims, with a stated value of $13,973,000 (*Id.*). The second claim was for a "[p]ossible legal malpractice claim against Watts Guerra Craft" with the value listed as "unknown[1]" (*Id.*). On October 9, 2008, Horiba settled its claims against Debtor, agreeing that Debtor would pay Horiba $362,433 subject to offset from any judgment in favor of Debtor on its counterclaims (*Id.*).

There are three major proofs of claim filed in this case. Horiba filed a claim seeking the settlement amount plus interest and attorney's fees valued at $951,096 (Claim No. 10-1). Gary Anderson—Debtor's president and sole shareholder—and his wife Susan ("the Andersons") filed proofs of claim for $252,060 and $412,775, respectively (Claims 8-1 and 9-1). These claims arise from alleged unpaid compensation to Mr. Anderson and from alleged loans Mrs. Anderson made to Debtor (*Id.*).

---

1 Debtor believed that its counsel throughout part of the Horiba litigation, the Watts Law Firm, committed malpractice and therefore listed the "possible legal malpractice claim."

2

On January 26, 2010, Trustee filed a Motion for Leave to Dismiss Horiba Counterclaim in Pending Litigation (ECF No. 29). Trustee specifically sought to "abandon" the Horiba counterclaims (*Id.*). As stated in his Motion for Leave, Trustee's motives for abandoning the counterclaims stemmed from a desire to pursue the outstanding malpractice claims, which Trustee claimed he could not do while the Horiba litigation was pending (*Id.*). According to Trustee, Debtor's counsel in the Horiba litigation was negligent, breached fiduciary duties, made damaging admissions to the district court, and failed to prepare Debtor's claims and defenses, rendering Debtor's chances of succeeding in the underlying suit greatly diminished (*Id.*). As such, Trustee claimed finding counsel to pursue the counterclaims filed by Debtor would be "futile," and that the $13.9 million claim Debtor listed on Schedule B simply could not be realized (*Id.*). Trustee further claimed he could not engage counsel on an hourly basis because there were insufficient funds in the estate to do so (*Id.*). Trustee acknowledged there was risk involved in dismissing the Horiba counterclaims, including the possibility that Tres-Ark may be barred from re-filing. For the reasons stated above, however, Trustee argued dismissing the Horiba counterclaims was the best option.

The Court granted Trustee's Motion on February 23, 2010, authorizing and directing Trustee "to dismiss the Debtor's counterclaims" (ECF No. 31). Trustee succeeded in having the Horiba counterclaims dismissed with prejudice on May 5, 2010, in the Stipulated Dismissal of Tres-Ark's Counterclaims granted by the District Court for the Central District of California (Cause No. 02-07-CV-07106-AHM-CT, ECF No. 126).

After dismissing the Horiba counterclaims, Trustee followed through with his plan to pursue the malpractice claims against Debtor's counsel in the Horiba litigation. On December 1, 2011, Trustee filed a motion under Federal Rule of Bankruptcy Procedure 9019 to settle the

malpractice claims for approximately $1,550,000 (ECF No. 75). The Court approved the settlement on December 20, 2011 (ECF No. 81). The bankruptcy estate retained the majority of the payout from settlement, with the Andersons receiving five percent of the payout pursuant to an agreement between the parties (ECF No. 158).

On May 9, 2012, the Andersons filed an adversary proceeding on behalf of the United States under Rule 2010 against Trustee (Case No. 12-01075, ECF No. 1). In essence, the Andersons claim Trustee was both negligent and grossly negligent in dismissing, without authorization, the Horiba counterclaims with prejudice and that Trustee breached his fiduciary duty to minimize claims against the estate.[2] Trustee filed an answer and counterclaim, seeking to equitably subordinate the Anderson's claims (*Id.* at ECF No. 14). The parties subsequently filed a joint motion to abate the proceeding to allow Trustee to object to the Horiba proof of claim which, if successful, would cause any damage to the estate under the adversary proceeding to be negligible. The Court abated the proceeding on November 7, 2012 (*Id.* at ECF No. 33).

On June 28, 2012, Debtor filed this Motion to Remove Trustee, claiming Trustee's conduct throughout the Horiba litigation and the administration of the estate warrants his removal (ECF No. 149). Although the Motion was filed by Debtor, many of the allegations involve the Andersons and their treatment throughout the bankruptcy case.[3]

## PARTIES' CONTENTIONS

Debtor's grounds for removal of Trustee concern two main points. First, Debtor claims Trustee's conduct in regard to the Horiba litigation renders Trustee a non-disinterested party. Debtor argues that, as trustee of the bankruptcy estate, it is Trustee's duty to seek to minimize all

---

[2] The Court makes no findings or judgments regarding the Anderson's adversary proceeding against Trustee in this Memorandum Opinion.

[3] As stated previously, Gary Anderson served as president and sole shareholder of Debtor. Both he and his wife, Susan, were two of Debtors' major creditors.

4

claims made against the estate in order to enlarge the amount payable to creditors. One such claim is for the settlement amount due to Horiba from the California litigation. According to Debtor, one of the ways Trustee can diminish the Horiba proof of claim is to pursue the Horiba counterclaims, which Trustee dismissed with prejudice. Debtor believes that in order to pursue the Horiba counterclaims, Trustee may need to argue that he acted outside of his authority in dismissing the counterclaims with prejudice, therefore negating any binding effect of the dismissal. Debtor further argues that Trustee would be loath to make the argument that he acted beyond his authority, particularly when Trustee's answer in the adversary proceeding denied that the dismissal with prejudice was without oversight or authority. This conflict, according to Debtors, prevents Trustee from effectively representing the estate.

In addition, Debtor argues that the pending adversary proceeding and Trustee's acrimonious relationship with creditors warrant removal. Instead of filing a motion to dismiss the adversary proceeding, which Debtor implies would indicate that Trustee believed the claims were meritless, he instead filed an answer and counterclaims, allegedly indicating a personal bias against the Andersons. Furthermore, Debtor claims a motion to abate filed by the Trustee in the adversary proceeding was "replete with hyperbole, invective and vitriol against the Andersons." Citing the motion to abate, along with a claim of "viscerally unprofessional behavior" from an employee of Trustee,[4] Debtor argues that this conduct demonstrates that Trustee is incapable of impartially representing all creditors and therefore must be removed. Finally, Debtor asserts that Trustee failed to file Debtor's tax returns in a timely fashion, and that Trustee would not allow Debtor's accountant to prepare the returns, causing further delay and further evidencing Trustee's bias against Debtor and the Andersons.

---

4 Specifically, one of Trustee's employees is alleged to have directed derogatory and inappropriate language at the Debtors' counsel, as well as hint at vague conspiracy theories to dismiss the paperwork the Andersons provided.

5

Trustee denies all of Debtor's allegations (ECF No. 158). First, with respect to the Horiba counterclaims, Trustee claims Debtor and the Andersons should have objected to Trustee's dismissal when he asked the Court for leave to settle the claims, and that they had another chance to object when Trustee settled the malpractice claim against the Watts law firm. According to Trustee, the parties served notice on the Andersons in both the motion for leave and the motion to approve compromise, giving them the chance to object if they wanted to. As for the separate adversary the Andersons filed against him, Trustee argues that the Andersons cannot create a conflict of interest by filing an adversary proceeding against Trustee and then claim that such lawsuit creates a conflict of interest. In the separate adversary proceeding, Trustee claims he hired separate counsel to represent him and has not sought estate resources for his own defense.

Concerning the relationship between Trustee and the Andersons, Trustee maintains that the relationship between them has been "nothing but professional." While Trustee has questioned or objected to insider claims, Trustee argues that this does not translate to personal animosity because Trustee simply was fulfilling his duties. Further, because Trustee's duty is to represent all creditors, the fact that his actions created tension between himself and the Andersons is of no consequence. As for Debtor's concerns regarding the unfiled tax returns, Trustee asserts that he prepared Debtor's returns in a timely fashion. In his response, Trustee claims he had to file a motion to compel turnover of tax documents to allow Trustee and his accountant to prepare the returns. Trustee argues that only once he received these documents by the Court's order was Trustee and his staff able to begin preparing the returns.

Finally, Trustee claims the bankruptcy estate has been almost entirely administered at this point. Of the three claims remaining against the estate, two of them were filed by the Andersons,

6

who "cannot credibly be expected to investigate and object to their own claims." According to Trustee, removal would therefore serve no purpose and would detract from administration of the estate.

## DISCUSSION

There is currently no authority from the Fifth Circuit setting forth the standard to remove a trustee. The Bankruptcy Code authorizes courts to remove a trustee "after notice and a hearing." 11 U.S.C. § 324(a) (West 2012). In order for a court to remove the trustee, however, it must have cause to do so. *Id.*; See **In re Marvel Entm't. Group**, 140 F.3d 463, 471 (3rd Cir. 1998) (noting that the Bankruptcy Code only allows removal of a trustee "for cause"). The Bankruptcy Code does not define cause, and offers no other guidance on the issue. Each bankruptcy case involving removal of the trustee, therefore, requires determination on a case-by-case basis. **In re Haugen Construction Serv., Inc.,** 104 B.R. 233, 240 (D. N.D. Apr. 4, 1989). Examples of cause sufficient to remove a trustee include breach of fiduciary duty, trustee misconduct, and disinterestedness. 3 COLLIER ON BANKRUPTCY 324-4 (Alan R. Resnick and Henry J. Sommer, eds., 16th Ed. 2010) (internal citations omitted). As defined by 11 U.S.C. § 101(14), a disinterested person can be anyone with an interest "materially adverse to the interest of the estate or of any class of creditors or security holders." A conflict of interest can constitute "cause" for removal if, based upon the totality of the circumstances, the conflict could have a materially adverse effect on the estate. **Dye v. Brown (In re AFI Holding, Inc.),** 530 F.3d 832, 838 (9th Cir. 2008) (affirming **In re AFI Holding,** 355 B.R. 139 (B.A.P. 9th Cir. 2006)). According to at least one court, courts should only remove a trustee if "doing so would improve, rather than detract from, the administration of the estate." **In re Kim,** 2009 WL 2143796 (Bankr. D. Haw. Jul. 14, 2009).

7

A trustee serves as the representative of the bankruptcy estate. 11 U.S.C. § 323(a). Such an estate is generally comprised of a debtor's prepetition property, subject to several exceptions. *See generally id.* at § 541(a) (listing what property comprises the estate). The estate includes a debtor's prepetition causes of action. **Kane v. Nat'l Union Fire Ins. Co.,** 535 F.3d 380 (5th Cir. 2008) (citing **In re Swift,** 129 F.3d 792 (5th Cir. 1997) (holding that, if a cause of action accrues prior to a bankruptcy filing, it vests in the trustee)). The trustee, in representing the estate, represents the interests of all of the estate's creditors. The trustee's job is therefore to enlarge the estate as much as possible. A trustee's actions in performing these duties are protected by a business judgment standard. *See* **In re Age Refining, Inc.,** 446 B.R. 786 (Bankr. W.D. Tex. Feb. 22, 2011) (noting that a trustee is "free to exercise his business judgment" to best serve the interests of the estate). Accordingly, "a trustee will not be removed for mistakes in judgment where the judgment is discretionary and reasonable under the circumstances." 3 COLLIER ON BANKRUPTCY 324-5; **In re Cult Awareness Network, Inc.,** 205 B.R. 575 580 (Bankr. N.D. Ill. Mar. 14, 1997) (upholding a trustee's actions when the judgment was "not unreasonable or beyond the scope of his discretion"). A trustee is also not required to prosecute every cause of action belonging to the estate. **In re Reed,** 178 B.R. 817, 821 (Bankr. D. Ariz. Mar. 3, 1995) ("The trustee is granted complete authority and discretion regarding the prosecution and defense of any litigation of the debtor's estate.").

A.  Burden of Proof

Just as the Bankruptcy Code is silent as to the definition of "cause," it offers no guidance in regard to the requisite burden of proof a movant must meet to remove the trustee. When the Bankruptcy Code is silent on the burden of proof, the Supreme Court states preponderance of the evidence is presumed. **Grogan v. Garner,** 498 U.S. 279 (1991). In *Garner*, the Supreme Court

held that preponderance "is presumed to be applicable in civil actions between private parties unless particularly important individual interests or rights are at stake." *Id.* It appears that preponderance is therefore an appropriate burden for a motion to remove a trustee. In at least one case, however, a bankruptcy court required clear and convincing evidence. **In re Walker**, 2004 WL 3152787 (Bankr. S.D. Fla. Dec. 1, 2004), *aff'd*, **Walden v. Walker,** 515 F.3d 1204 (11th Cir. 2008). The court in *Walker* emphasized that removal of a trustee is "as serious an action as a bankruptcy judge could possibly decide," and that its decision to remove the trustee is "not undertaken lightly." *Id.*

This Court recognizes that a motion to remove trustee under Section 324 is a serious matter. Indeed, if a trustee is removed, he or she is also removed from all other bankruptcy cases in which he or she is involved unless the court rules otherwise.[5] 11 U.S.C. § 324(b). Such cases may involve "particularly important individual interests or rights" sufficient to deviate from the Supreme Court's default rule set forth in *Garner*. The Court, however, declines to adopt a requisite burden of proof, because there is neither a preponderance of the evidence nor clear and convincing evidence sufficient to remove Trustee.

B.   Debtor's Counterclaims Against Horiba

Debtor's first argument for removal of Trustee centers on how Trustee handled the Horiba counterclaims. As stated previously, Trustee dismissed the Horiba counterclaims with prejudice after asking the Court for leave to do so. Trustee did not use the phrase "with prejudice" in his motion for leave, but rather asked for leave to dismiss and "abandon" the counterclaims. The Court, in granting Trustee's motion, did not specifically authorize Trustee to dismiss with prejudice, but rather granted leave to "dismiss the Debtor's counterclaims." Debtor

---

5 The Court notes that Debtor is only seeking removal of Trustee in this particular case. The fact that removal of trustee from all cases is the default under the Code, however, gives further credence to the premise that removing a trustee is not an action to be taken lightly.

9

now argues that, by dismissing the claims with prejudice, allegedly without notice to the parties in interest in the case, Trustee dismissed the largest claim Debtor's estate possessed. Debtor believes it to be in the best interest of the estate for Trustee to litigate the Horiba counterclaims. Trustee thinks otherwise, as evidenced both by his dismissal of the claims with prejudice and his representations to the court in his motion for leave to dismiss the claims. According to Trustee, the Horiba counterclaims' value dropped sharply "due to the negligence, breaches of fiduciary duties and other actions of Debtor's counsel." Such actions rendered a search to find counsel to pursue the claim on a contingency basis "futile." Trustee also stated he wished to pursue malpractice claims against Debtor's counsel, which he ultimately did, enlarging the estate by $1.5 million. Further, Trustee acknowledged in his motion for leave that dismissing the claims created a risk that the claims would be barred from refiling in the future.[6] Debtor at no point opposed Trustee's motion, nor did it oppose Trustee's settlement with Debtor's counsel in the malpractice action.

    Debtor states that the value of the Horiba counterclaims is much higher than what Trustee has represented to the Court. Indeed, Debtor asserts that the only thing left to do in this case at all is to object to Horiba's claim against the estate. Part of Debtor's grounds for this Motion to Remove rest on the fact that Trustee has not objected to the claim and is instead focusing on trying to subordinate the Anderson's claims. Put simply, this boils down to a difference of opinion on how Trustee should proceed with the administration of the estate. Such scenarios do not place a trustee's status as a disinterested person in jeopardy. The fact that Debtor, or some of the estate's creditors, want the Trustee to take different action is not cause for removal. Trustee has provided several bases for determining that pursuing the Horiba counterclaims is not in the

---

6 It is unclear why Trustee did not state in his motion for leave that he planned to dismiss the claims with prejudice, rather than refer to his more nebulous risk factor analysis. Trustee did, however, make it clear in his motion that, once the Horiba counterclaims were dismissed, there was a possibility that they could not ever be refiled.

best interest of the estate. While it is true that, in order to pursue the Horiba counterclaims, Trustee would likely have to argue that he acted outside of his authority, that fact alone is not enough to establish cause for removal.

At hearing, Debtor's counsel commented that we "will never know" whether Trustee's reluctance to pursue the Horiba counterclaims stems from his business judgment or from his reluctance to argue that he acted outside of his authority. When considering the removal of a trustee, however, "horrible imaginings alone cannot be allowed to carry the day." ***In re Martin***, 817 F.2d 175, 181 (1st Cir. 1987). "We will never know" does not satisfy a preponderance of the evidence, nor does it provide clear and convincing evidence that cause exists for Trustee's removal. The Court finds Debtor has not provided sufficient evidence regarding Trustee's actions with respect to the Horiba counterclaims to establish cause to remove Trustee.

C.  Trustee's Relationship with Debtor

Debtor further pleads the relationship between Debtor and Trustee, as well as the relationship between Debtor and the Andersons, has become so acrimonious that further cooperation is unlikely. As a result, according to Debtor, the Court should remove Trustee because the relationship between the parties strains Trustee's ability to represent the best interests of the estate. According to Debtor, the *AFI Holdings* case stands for the proposition that continuing animosity between the trustee and creditors makes trustee removal appropriate.[7] Debtor alluded to multiple communications between Trustee, Trustee's staff, and the Andersons that show that Trustee treated the Andersons "with disdain." The Court, however, did not receive any evidence as to what these communications actually were, and Debtor did not provide evidence demonstrating that Trustee himself had an acrimonious relationship with Debtor. The

---

7 The Court fails to see where the Ninth Circuit states or alludes to this "continuing animosity" standard in the *AFI Holding* case.

Court therefore finds Debtor did not meet its burden in establishing cause to remove Trustee due to an alleged acrimonious relationship.

D.     Adversary Proceeding Against Trustee

The Court next considers the adversary proceeding the Andersons filed against Trustee. In short, the Andersons filed this proceeding against Trustee for the same reason that they believe he is not a disinterested party—that he acted outside of his authority in dismissing the Horiba counterclaims.[8] Debtor clams this adversary pits the Andersons—two large creditors of the estate—and Trustee against each other, compromising Trustee's ability to represent the best interests of the entire estate. The Court notes it was the Anderson's choice to file the adversary proceeding against Trustee. Trustee himself did not initially seek any claims against the Andersons. Such a filing against a trustee does not constitute a lack of disinterestedness. *In re Morgan*, 375 B.R. 838 (B.A.P. 8th Cir. 2007). If filing an adversary proceeding constituted cause, any creditor unhappy with the administration of the estate would simply file an adversary proceeding against Trustee and then come to the court seeking the trustee's removal. The Court therefore finds the mere presence of this adversary proceeding to be insufficient cause under Section 324 sufficient to remove Trustee.

Debtor further claims that Trustee's actions in response to the adversary proceeding warrants his removal. In his answer to the Anderson's adversary complaint, Trustee filed a counterclaim against the Andersons. Debtor provides this counterclaim as evidence that Trustee is so at odds with the Andersons that he cannot properly represent their interests, along with the interests of other creditors, in the bankruptcy estate. Trustee's counterclaim, however, is an action for equitable subordination and objection to the Anderson's claims, stating that the

---

8 The Court again cautions that it makes no findings or ruling in the separate adversary proceeding, which has been abated as of the date of this Opinion.

Anderson's claims against the estate should not receive any priority status because the Anderson's "inequitable conduct." Equitable subordination is a tool in the arsenal of any trustee that can be used to enlarge the estate for the benefit of all creditors. *See, e.g.,* ***In re Cajun Elec. Power Co-op., Inc.,*** 119 F.3d 349 (5th Cir. 1997) (stating that a bankruptcy trustee has standing to bring an equitable subordination claim on behalf of the estate). Therefore, merely objecting to a claim and asking for its equitable subordination is not evidence that a trustee has a conflict of interest with the estate; in fact, it may be evidence that a trustee is actually acting in the best interest of the estate.[9] The Court finds the fact that Trustee filed a counterclaim against the Andersons in the adversary proceeding is not cause for removal.

Debtor also made several comments at the hearing regarding the Trustee's retention of counsel to defend him in the adversary proceeding. Debtor is concerned that Trustee's primary motive in doing so is to rack up legal fees which could be taken out of the estate. According to Debtor, it filed the adversary proceeding solely to preserve the claims it could potentially bring against Trustee and to prevent the claims from being barred by the statute of limitations. Prior to filing, Debtor claims it offered to toll the statute of limitations in order to delay filing the claim. Trustee, according to Debtor, refused to sign such a tolling agreement. Considering these facts, the Court does not find Trustee's retention of counsel relevant in determining whether cause exists to remove Trustee. Debtor should have reasonably understood that its decision to file a claim against Trustee, whether to preserve the statute of limitations or otherwise, would require Trustee to seek legal counsel to defend himself. The Court therefore finds Trustee's retention of legal counsel insufficient cause for removal.

---

9 The Court does not make such a finding here, but uses this comment to show that, without additional evidence as to Trustee's motives for filing the counterclaim, Debtor has not met its burden to show cause for removing Trustee.

13

E.  Debtor's Tax Returns

Debtor next claims Trustee has needlessly delayed filing 2009, 2010, and 2011 tax returns to the detriment of the estate. Debtor provided Trustee's own testimony during the hearing on Trustee's Motion to Compel as evidence that, as of March 27, 2012, Trustee had not filed a 2009 tax return for Debtor's estate, nor had he sought an extension.[10] Although Debtor offered to have its accountant prepare the tax returns, Trustee testified that he rejected Debtor's offer, opting instead to employ his own accountant. According to Trustee, he did not believe Debtor's accountant had filed accurate returns in the past and had also offered Debtor bad advice prior to the bankruptcy filing. Trustee further testified that Mr. Anderson, as Debtor's representative, refused to cooperate by providing necessary documentation due to his conflict of interest in the case.[11]

The Court did not hear evidence from the parties regarding the delay in filing Debtor's tax returns. According to the testimony from Trustee's motion to compel, Debtor caused the delay by not providing necessary documentation. Debtor, the party carrying the burden of proof, did not provide sufficient evidence to rebut this assertion. Therefore, the Court finds Debtor did not meet its burden in proving that the delay in the filing of Debtor's tax returns constitutes cause to remove Trustee.

F.  Administration of the Estate

As a final note, the Court notes the estate has been nearly fully administered at this point. Both parties admit that the largest claims left in the estate are Horiba's claim and the

---

[10] Trustee's testimony at the hearing on Trustee's Motion to Compel was admitted as evidence at hearing on the present Motion to Remove Trustee.

[11] According to testimony, Trustee believes that Debtor, by not revoking its "Subchapter S" election prior to filing bankruptcy, exposed itself to a large amount of tax liability. Trustee believes Mr. Anderson's reluctance to provide the requisite documentation is due to an increased likelihood that the tax returns would result in much higher tax liability than previously thought.

Andersons' claims. As the Andersons are unlikely to object to their own claim, this leaves only the Horiba claim and a small number of remaining claims. Debtor further concedes that the only thing left to do in the estate is to pursue Horiba's proof of claim. The Court follows the suggestion from *In re Kim*, which stated that removal is only appropriate if it would improve administration of the estate. 2009 WL 2143796 at *1. Removal of Trustee at this point in the administration of the estate would be detrimental, not beneficial, to the estate. This gives further weight to the Court's determination that Debtor has not met its burden of showing cause necessary to remove Trustee.

## CONCLUSION

Considering the totality of the circumstances discussed above, the Court finds Debtor has not met its burden, either by a preponderance of the evidence or by clear and convincing evidence, to establish cause under Section 324 to remove Trustee.

IT IS THEREFORE ORDERED that Debtor's Motion to Remove Trustee shall be, and hereby is, DENIED.

# # #